AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
OCT 2 5 2023
AT_____ O'CLOCK
John M. Domurad, Clerk - Albany

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Galaxy S22 Ultra 5G (SM-S908U1) currently in the custody of HSI in Malta, New York | )<br>)<br>)  Case No. 1:23-mj-611 (CFH)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the _____Northern_____ District of _____New York_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2423(b); | Travel with intent to engage in illicit sexual conduct; |
| 18 U.S.C. § 2422(b) | Use of a facility or means of interstate or foreign commerce to knowingly persuade, coerce, or entice a minor to engage in unlawful sexual activity |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TAYLOR J WARD  *Digitally signed by TAYLOR J WARD*
*Date: 2023.10.25 11:51:30 -04'00'*

*Applicant's signature*

Special Agent Taylor Ward, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means).*

Date: October 25, 2023

*Judge's signature*

City and state: Albany, New York

Christian F. Hummel
*Printed name and title*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF    :
                                  :
Galaxy S22 Ultra 5G (SM-S908U1)   :
                                  :

## AFFIDAVIT

I, Taylor Ward, a Special Agent with the Department of Homeland Security, being duly sworn, hereby state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since November 2022. As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am presently assigned to the HSI office in Burlington, Vermont, whose geographic jurisdiction encompasses the District of Vermont, including its border with Canada. I have received extensive training provided by the Federal Law Enforcement Training Center and HSI in enforcement of the laws of the United States. I have received approximately 600 hours of instruction and training to include, but not limited to, investigating human trafficking and child exploitation offenses.

2. I make this affidavit in support of an application for a warrant to search a Galaxy S22 Ultra 5G (SM-S908U1) (the Subject Device), described more fully in Attachment A. The Subject Device is currently in the custody of Homeland Security Investigations, 11 Old Stonebreak Road, Malta, New York 12020.

3.      The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2423(b) (travel with intent to engage in illicit sexual conduct) and 18 U.S.C. § 2422(b) (enticement of a minor to engage in unlawful sexual activity), described more fully in Attachment B.

4.      The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents or witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Unless specifically stated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## PROBABLE CAUSE

5.      On September 11, 2023, Detective Richard Weinisch from the Chittenden Unit for Special Investigations (CUSI) notified me of an alleged sexual assault of a 14-year-old female (referred to herein as MV1) by an adult male (later identified as Jose Alvaro Merino Lopez). Lopez is alleged to have traveled from New York to meet and have sexual contact with MV1 after the two met using the social media platforms Facebook and Instagram. Det. Weinisch also sent me a report from the Colchester Police Department (CPD) regarding the alleged assault. I have reviewed the report and learned the following:

   a.      On September 9, 2023, CPD officers Lucas McClanahan and Emily Fitzpatrick spoke with MV1 and her mother. MV1 disclosed that she used her phone to communicate with Lopez, and that Lopez provided telephone number (252) 658-4843 to MV1 as the means to contact him.

1. I have reviewed information received from AT&T regarding telephone number (252) 658-4843. Lopez is the subscriber of this number and the phone using that number is a Samsung Galaxy S22 5G (SM-S908U1).

b. MV1 and her mother provided consent for law enforcement to review MV1's messages with Lopez on Facebook and Instagram from MV1's phone. The CPD officers took three videos of the communications between MV1 and Lopez.

6. On September 18, 2023, I received the three videos taken by CPD. I used Google Translate to translate the conversations on the videos from Spanish to English. Emily Rivera-Nunez, a Spanish speaking HSI Forensic Interview Specialist, reviewed the translations and confirmed that they were, generally, accurate. The contents of these videos are addressed below:

a. Video file MVI_0947 shows the conversations between MV1 and Lopez on Facebook between July 5, 2023 and July 31, 2023. It is approximately six minutes and 25 seconds long and contains the following messages, among others:

1. On July 6, 2023, at approximately 8:07 pm, Lopez asked MV1 where she lives, to which MV1 replied "Vermont." Later on in the text chain, Lopez asked when MV1 and he are going to get together, along with when MV1 would be free to hangout. Lopez continued to ask MV1 for pictures of herself and about where MV1 lived in Vermont. MV1 responded by saying "Burlington." Lopez then asked MV1 if she is a student or if she has a job and works. MV1 replied by saying that she is a student. Lopez noted this and wrote: "you're still a girl," to which MV1 responded with "yes hehe." MV1 then asked Lopez where he is from, to which Lopez responded "Tilapa" (a village in Mexico). MV1 stated that she is

from "the white land." Lopez pressed further and asked MV1 how many years she's been here in the United States. MV1 answered by saying "barely a year." MV1 then asked Lopez, "how old are you?" Lopez replied with "26 and you?" MV1 wrote: "I am 14 hehehe."

    2. On July 9, 2023, at approximately 9:14 pm, Lopez sent a picture of himself in front of a wall that said "Ixtlan de Juarez," to MV1. Lopez then asked MV1 to send videos and pictures of herself to him. MV1 sent what appears to be a Tik Tok video she made of herself using selfies. MV1 also sent two photos to Lopez that appear to have been taken by her as her arm is seen in the image outstretched as if to hold something. Lopez told MV1 that he lived near the Albany, NY area in response to her question of whether he lived in the United States or was just visiting.

    3. On July 30, 2023, at approximately 9:33 am, Lopez sent MV1 a meme, a photo with the caption: "What would you do if I stole a kiss from you? You avoid me. You hit me. You do nothing and you let whatever happens happen. you hug me and humor me. you kiss me for awhile and hard. you turn on until I let you go. or what do you do?"

    b. Video file MVI_0946 shows the conversations between MV1 and Lopez on Instagram between August 11, 2023 and September 9, 2023. It is approximately nine minutes and 47 seconds long and contains the following messages, among others:

    1. On August 11, 2023, at approximately 9:03 pm, Lopez told MV1 that she was beautiful.

    2. On September 1, 2023, at approximately 6:34 pm, Lopez wrote: "how are you hotty," which was a change in how he addressed MV1. Later that morning, Lopez asked when he could come visit MV1, but then followed up by asking if he could come up the

following day (September 2, 2023). Lopez suggested that he and MV1 could go and get ice-cream as something to do. Lopez then told MV1 that he was coming to see her and asked where they could meet.

3. On September 2, 2023, at approximately 10:21 am, Lopez asked MV1 where she lived and where he should pick her up in Vermont. MV1 responded with "Burlington." A short time later, Lopez told MV1 to get ready because he was on his way. Lopez then told MV1 that he was in Vermont but lost. MV1 shared her location with Lopez on Apple maps. Lopez asked MV1 if she was alone at this time, to which MV1 responded "yes." Lopez then sent a photo that appeared be taken from a phone inside a vehicle driving on a road with a large green sign overhead stating "Exit 14E, 2 East, S. Burlington." Shortly thereafter, Lopez sent a message asking MV1 where she was, to which MV1 responded "in the mall." Lopez then sent a picture of the inside of the University Mall in Burlington, Vermont, to MV1. Later that evening, Lopez sent three pictures to MV1 of the two of them together at an area that appears to be the Burlington waterfront and boardwalk.

4. The next day, September 3, 2023, at approximately 1:17 pm, Lopez sent a message to MV1 saying "what are you doing hotty." Later that evening, Lopez asked MV1 if she wanted him to come visit again.

5. On September 4, 2023, at approximately 11:33 pm, Lopez sent MV1 a meme with the caption: "I'll trade a kiss of mine for a kiss of yours."

6. On September 5, 2023, at approximately 9:55 pm, Lopez asked MV1 what day they were getting together again.

7. On September 6, 2023, at approximately 10:42 pm, Lopez sent a meme to MV1 with the caption: "I wish I could hug you right now... but I can't... so... I'm sending you this video."

8. On September 7, 2023, at approximately 9:23 pm, Lopez sent MV1 a meme with the caption "I have a hug ready for when I see you." At approximately 11:15 pm, Lopez sent another meme to MV1 with the caption "you and I, my lips, kissing, your lips, I don't know, thinking about it."

9. On September 8, 2023, at approximately 7:29 pm, Lopez asked MV1 to "send me a photo of you hotty." Lopez later asked MV1 if she had a kiss for him. Then Lopez asked MV1 if he could kiss her. Lopez then asked MV1 when she was coming to see him, but right after posed the question "or are you afraid?" Lopez then asked MV1 if he could see her the next day. Toward the end of the conversation, Lopez asked if he could see MV1 alone.

10. On September 9, 2023, at approximately 9:23 am, Lopez told MV1 that he was on his way to see her and asked where he could pick her up. MV1 told him that she was in Burlington. Lopez later asked where he could wait for MV1 to meet her. MV1 responded by saying "Airport park" (a park in Colchester, Vermont). MV1 told Lopez that she would walk and meet him there. Lopez sent MV1 a picture of a basketball court at Airport Park, saying "I'm here." MV1 told Lopez to go get something to eat while she finished up some stuff with her family. At approximately 5:22 pm, Lopez messaged MV1 saying "baby, what are you doing?" followed by "who are you with?" In response, MV1 wrote: "nobody" and "I'm

alone." At approximately 10:24 pm, Lopez messaged MV1 saying "good night love. [Blowing kiss emoji][Heart emoji]."

7. Later that night, MV1 reported to the police that Lopez sexually assaulted her. She was subjected to a physical examination at the University of Vermont Medical Center, which led to the discovery of semen in her vagina and on her clothing.

8. Under Vermont state law, a violation of 13 V.S.A. § 3253a(a)(8), aggravated sexual assault of a child, occurs when the victim is subjected by the actor to repeated non-consensual sexual acts as part of the same occurrence, and a violation of 13 V.S.A. § 2602, lewd or lascivious conduct with a child, occurs when a person willfully and lewdly commits any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child.

9. On October 18, 2023, HSI SA Josh Otey and I interviewed Jose Alvaro Merino Lopez. During this interview, Lopez disclosed the following:

    a. He knew MV1 and acknowledged traveling to meet with her twice. He denied having sexual intercourse with her.

    b. He communicated with MV1 using social media platforms accessible using the Internet. Specifically, he stated that he communicated with MV1 using Facebook, though he recanted that and said they used Instagram to communicate.

        1. I believe Lopez used the Subject Device to access Instagram because subpoenaed information from Instagram shows Lopez sending photos and messages

while he was driving to and while in Vermont during the time he was traveling to meet with MV1.

10. After I concluded my interview with Lopez, he was arrested on an extraditable warrant issued by the State of Vermont. Lopez's phone (the Subject Device) was seized incident to arrest. The Subject Device is now being held in an evidence locker at HSI Albany, located at 11 Old Stonebreak Road, Malta, New York 12020.

## ELECTRONIC DEVICES AND FORENSIC ANALYSIS

11. Forensic extractions of mobile devices are conducted in a different manner than a hard drive on a computer. An extraction on a mobile device occurs with the device powered on, which means some of the data on the device, such as dates and times, can change with each extraction. The type of media used in mobile devices also conducts "maintenance," unbeknownst to the user, when the device is powered on. This "maintenance" can overwrite data in unallocated space, making it no longer recoverable with forensic software. Therefore, data on the Subject Image Copies may no longer be present on an extraction/image conducted at a later date or time.

12. As further described in Attachment B, this application seeks permission to locate not only computer files, records, and materials that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online

nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage Device or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created, and the sequence in which they were created, although this information can later be falsified.

      b.     As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus spyware and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicting when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how a cellular telephone was used, the purpose of its use, who used it, and when.

      d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

13.     Because this warrant only seeks permission to examine the Subject Device, which is already in law enforcement's possession, execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

14.     Based upon the foregoing, I submit that probable cause exists to search the Subject Device, more specifically described in Attachment A., for the items delineated in Attachment B.

TAYLOR J WARD
Digitally signed by TAYLOR J WARD
Date: 2023.10.25 11:47:57 -04'00'

TAYLOR WARD
Special Agent
Homeland Security Investigations

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone on October 25, 2023,

_____
Hon. Christian F. Hummel
United States Magistrate Judge

**ATTACHMENT A**

**DESCRIPTION OF PREMISES TO BE SEARCHED**

A Samsung Galaxy S22 Ultra 5G (SM-S908U1) cellular telephone with assigned telephone number (252) 658-4843, which was seized from Jose Alvaro Merino Lopez on October 18, 2023 (the Subject Device). The Subject Device is being held in the evidence locker at office of the Homeland Security Investigations (HSI), Resident Agent in Charge (RAC), Albany, which is located at 11 Old Stonebreak Road, Malta, New York 12020.

## ATTACHMENT B

## PARTICULAR ITEMS TO BE SEIZED

The following items to be seized constitute contraband, fruits, instrumentalities, and evidence of the use of a facility of interstate or foreign commerce to persuade, entice, or induce a minor to engage in sexual activity for which a person could be held criminally responsible, in violation of 18 U.S.C. § 2422(b), and travel with intent to engage in unlawful sexual contact, in violation of 18 U.S.C. § 2423(b), committed by Jose Alvaro Merino Lopez:

a. Communications with minors, including MV1;

b. Images or videos depicting MV1;

c. Images or videos depicting Lopez;

d. Information, correspondence, records, documents, or other materials constituting evidence of or pertaining to items "a" through "c" above (namely use of a facility of interstate or foreign commerce to entice, persuade, or induce a child to engage in sexual activity for which a person could be held criminally liable and travel with intent to engage in unlawful sexual contact), including but not limited to:

   i. Correspondence or communications, such as electronic mail, chat logs, and electronic messages;
   ii. Internet usage records, usernames, logins, passwords, e-mail addresses and identities assumed for the purposes of communication on the Internet, billing, account, and subscriber records, chat room logs, chat records, membership in online groups, clubs or services, connections to online or remote computer storage, and electronic files;
   iii. Diaries, address books, names, contact lists, and lists of names and addresses of individuals who may have been contacted by the computer and internet websites;
   iv. Shared images, "friends lists," and "thumbnail" images;
   vi. Documents or other records evidencing ownership or use of the Subject Device;
   vii. Stored data that would tend to show the location of the device or user including, but not limited to, stored GPS records of latitude & longitude coordinates, cellular tower connection data such as logs of previously connected cell towers, Wi-Fi Access Point identifiers, and embedded location metadata within photos and videos;
   viii. Data related to the Subject Device's system and storage configurations, device identification numbers, configuration settings data, file system format; and
   ix. Data from the Subject Device that would show how and when the device was used. Such records may include information entered into the device by the user such as

ownership and registration records, address book contacts, notes, memos, internet history, installed apps, and other stored files

       e.       The items listed in "a" through "d" above may be seized in whatever form, visual or aural, and by any means by which they may have been created, stored, or found, including Graphic Interchange Formats (including but not limited to JPG, GIF, TIF, AVI, MPG, and MPEG), and other digital data files.

       g.       For discovery and trial authentication purposes, HSI will maintain a forensic image of the Subject Device.